USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-4-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LUCIANO SUCE,                        :
                                     :
            Petitioner,              :       07 Civ 8463(VM)
                                     :
        - against -                  :       **DECISION AND ORDER**
                                     :
JUSTIN A. TAYLOR, NEW YORK STATE     :
DIVISION OF PAROLE, and WARREN D.    :
BARKLEY,                             :
                                     :
            Respondents.             :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Pro se petitioner Luciano Suce ("Suce"), who is currently
incarcerated at the Cape Vincent Correctional Facility in New
York, petitions the Court for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254 ("§ 2254"). He alleges that the revocation
of his parole by the New York State Division of Parole (the
"Division") violated his right to due process under the
Fourteenth Amendment to the United States Constitution. For
the reasons discussed below, Suce's petition is DENIED.

## I. BACKGROUND[1]

A. UNDERLYING CRIME

---

[1] This factual summary derives from the parties' representations contained
in the following submissions and any exhibits attached thereto: Petition
for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, dated August 20,
2007 ("Pet."); Respondents' Memorandum of Law in Opposition to Petition
for a Writ of Habeas Corpus, dated May 16, 2008 ("Resp'ts' Mem.");
Declaration of Lisa Fleischmann in Opposition to Petition for a Writ of
Habeas Corpus, dated May 16, 2008 ("Fleischmann Decl."); Petitioner's
Reply to Respondents' Opposition and Memorandum of Law to the Petition for
a Writ of Habeas Corpus, dated June 2, 2008 ("Pet'r's Reply"). Except
where necessary, no further citation to these documents will be made.

-1-

On August 24, 1986, Suce entered his girlfriend's apartment in the Bronx and abducted her at gunpoint. On June 1, 1987, Suce was convicted in the New York Supreme Court of Kidnapping in the Second Degree, in violation of New York Penal Law § 135.20. As a second felony offender, Suce was sentenced to an indeterminate prison term of from eight to sixteen years. The New York Supreme Court, Appellate Division, affirmed his conviction on November 22, 1988, see People v. Suce, 535 N.Y.S.2d 286 (App. Div. 1st Dep't 1988), and leave to appeal to the New York Court of Appeals was denied on January 12, 1989. See People v. Suce, 535 N.E.2d 1349 (N.Y. 1989).

B.   SUCE'S PAROLE VIOLATIONS

Suce was released to parole supervision on August 22, 2000. On August 3, 2004, Suce, after testing positive for opiates, failed to complete his weekly report to his parole officer, Lisa Vargas ("Vargas"). On August 6, 2004 Suce was found outside his residence after curfew and in possession of drug paraphernalia in violation of the conditions of his parole. Additionally, Suce failed to comply with the directive of a parole officer to submit to a drug test. A parole violation warrant (the "Warrant") was issued on August 6, 2004 and Suce was taken into custody. Suce was also served with a Notice of Violation (the "NOV"), and a Violation of Release Report (the "Handwritten VOR") that had been prepared

-2-

by parole officer Solorzano ("Solorzano"). The Handwritten VOR charged Suce with four parole violations arising out of his conduct on August 3, 2004 and August 6, 2004.

By the time of his final parole revocation hearing on September 30, 2004, Suce had been charged with ten parole violations. The charges relevant to this proceeding included: possession of drug paraphernalia on August 6, 2004, in violation of Rule 11 of the Rules Governing Parole ("Charge 1"); failure to complete an office report on August 3, 2004, in violation of Rule 2 ("Charge 3"); refusing to take a drug test on August 6, 2004, in violation of Rule 12 ("Charge 4"); violation of curfew on August 6, 2004, in violation of Rule 12 ("Charge 5"); and using opiates without medical authorization on or before April 2, 2004, in violation of Rule 11 ("Charge 9").[2]

## C.  PAROLE REVOCATION PROCEEDINGS

A preliminary hearing was held on August 16, 2004 (the "Preliminary Hearing") before Administrative Law Judge Richard Albano ("Judge Albano"). After hearing testimony from Vargas, Judge Albano found that the Division had met its burden to

---

[2] Suce was also charged with use of heroin on or before August 3, 2004 in violation of Rule 11 ("Charge 2"), failure to comply with his mandated drug treatment in violation of Rule 12 ("Charge 6"), threatening the safety and well being of Ms. Sandra Suce on or about March 9, 2004 in violation of Rule 8 ("Charge 7"), threatening the safety and well being of Joseph M. Suce on or about March 9, 2004 in violation of Rule 8 ("Charge 8"), and conviction of disorderly conduct on March 25, 2004 in violation of Rule 8 ("Charge 10"). Charge 2 was dismissed due to lack of evidence, and Charges 6, 7, 8, and 10 were withdrawn by the Division.

establish probable cause for the issuance of the Warrant based on Suce being in violation of Rule 2 as indicated in Charge 3. Suce was arraigned on August 26, 2004 (the "Arraignment") before Administrative Law Judge Richard Birmingham ("Judge Birmingham").

Suce's final parole revocation hearing (the "Final Revocation Hearing") was held before Administrative Law Judge Joseph Maccario ("Judge Maccario") over the course of three days, September 30, 2004 (the "September 30 Hearing"), October 14, 2004 (the "October 14 Hearing"), and October 21, 2004 (the "October 21 Hearing"). At the September 30 Hearing, no testimony was heard because Suce, without permission, left during the hearing, stating "you do what you gotta do with this Court. I'm in Writ Court." (September 30 Hearing Tr. at 12, attached as Ex. F to Fleischmann Decl.) Following Suce's exit, Judge Maccario, at counsel's request, relieved Suce's counsel and appointed new counsel. At the October 14 Hearing, Suce pled not guilty to all ten charges, and Judge Maccario heard testimony from Vargas regarding Charges 3, 5, and 9, and parole officers Joseph Gates ("Gates") and Steve Miller ("Miller") regarding Charge 5. Judge Maccario also admitted into evidence the results of an on-site drug test given to Suce by Vargas on April 2, 2004, a requisition and chain of custody form for the April 2, 2004 drug test, and the Sterling Reference Laboratory positive results reported on April 16,

-4-

2004 (collectively, the "Lab Reports") regarding Charge 9. At the October 21 Hearing, Suce failed to appear and Judge Maccario, after determining that Suce had knowingly and voluntarily waived his right to be present at the hearing, conducted the hearing in his absence. Suce's counsel was also relieved due to Suce's failure to appear. Judge Maccario then heard testimony from Gates regarding Charges 1 and 4.

At the conclusion of the Final Revocation Hearing, Judge Maccario found that the Division had "met [its] burden of proving a violation of parole in an important respect" as to Charges 1, 3, 4, 5, and 9. (October 21 Hearing Tr. at 23, attached as Ex. H to Fleischmann Decl.) On October 22, 2004, Judge Maccario issued a written decision affirming that finding and joining in the Division's recommendation that the Parole Board impose a time assessment of 36 months.[3] However, on October 27, 2004, Parole Board Commissioner Robert Dennison ("Dennison") modified Judge Maccario's recommendation and instead issued a hold to the Maximum Expiration Date of Sentence. This ruling meant that Suce would serve the remainder of 75 months left on his original sentence, rather than the 36 months recommended by Judge Maccario. Dennison noted the nature of Suce's crime, his criminal history and

---

[3] A delinquent time assessment determines the date by which a parole violator will next be considered by the parole board for re-release. See 9 N.Y.C.R.R. § 8002.6(a).

parole violations, and the failure of Suce to attend the October 21 Hearing as reasons for the modification.

D.   APPEALS OF THE 2004 PAROLE REVOCATION

On May 11, 2005, the Appeals Unit of the Parole Board (the "Appeals Unit") denied Suce's appeal of his parole revocation.   Suce then filed a pro se writ of habeas corpus pursuant to New York Civil Practice Law and Rules Article 70 ("Article 70") in the New York Supreme Court, arguing that the Division had violated his due process rights.   The court rejected these arguments in an opinion by Acting Supreme Court Justice S. Peter Feldstein ("Justice Feldstein") dated March 29, 2006.   (See In Re Suce v. Taylor, County of St. Lawrence, Index No. 120125 (the "New York Supreme Court Decision"), attached as Ex. L to Fleischmann Decl.)   Suce appealed the decision, and on February 1, 2007, the New York Supreme Court, Appellate   Division,   Third   Department   (the   "Appellate Division") unanimously affirmed the determination upholding revocation of parole.   See New York ex rel. Suce v. Taylor, 828 N.Y.S.2d 728 (App. Div. 3d Dep't 2007).   On June 28, 2007, the New York Court of Appeals denied without comment Suce's motion for leave to appeal the Appellate Division's decision. See New York ex rel. Suce v. Taylor, 872 N.E.2d 876 (N.Y. 2007).

On August 15, 2007, Suce mailed to the Court, and thus properly filed, the instant petition for habeas corpus (the

-6-

"Instant Petition"). See, e.g., Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001). In the Instant Petition, Suce alleges that the Division violated his right to due process, claiming that: (1) Judge Maccario wrongly permitted the October 21 Hearing to proceed in Suce's absence (the "In Absentia Claim"); (2) Judge Maccario wrongly considered altered documents (the "Altered Documents Claim"); (3) Judge Maccario wrongly admitted into evidence the Lab Reports even though they were not provided to Suce's counsel prior to the Final Revocation Hearing (the "Non-Disclosure Claim"); (4) Judge Albano wrongly allowed Vargas to testify at the Preliminary Hearing in lieu of Solorzano, who had signed the NOV, prepared the Handwritten VOR, and arrested Suce (the "Solorzano Claim"); (5) Judge Maccario wrongly allowed Gates to give two divergent versions of his sworn testimony (the "Gates Testimony Claim"); and (6) the Division applied parole guideline regulations enacted after Suce's 1997 conviction in violation of the Ex Post Facto Clause of the United States Constitution (the "Ex Post Facto Claim"). Respondents counter that a habeas writ is improper in this case because Suce's claims are entirely without merit, and, in part, procedurally barred.

## II. **DISCUSSION**

A.    STANDARD OF REVIEW

-7-

As an initial matter, the Court is mindful that Suce is proceeding pro se, and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980)). Moreover, when a plaintiff brings a case pro se, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Still, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq. AEDPA provides that

> a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). "Errors of state law are thus not subject to federal habeas review." Thurman v. Allard, No. 01 Civ. 8746, 2004 WL 2101911, at *11 (S.D.N.Y. Sept. 22, 2004)

(<u>citing</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)).  "[I]t

is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."  <u>Estelle</u>,

502 U.S. at 67-68.  In contrast, a petitioner must demonstrate

that his conviction resulted from a state court decision that

violated federal law.  <u>See</u> <u>id.</u> at 68.

Not every violation of federal law will warrant the

issuance of a writ of habeas corpus, however.  <u>See</u> <u>Thurman</u>,

2004 WL 2101911, at *11.  AEDPA further provides:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" established

federal law if the state court arrives at a conclusion on a

question of law that is opposite to that reached by the

Supreme Court, or if the state court adjudicates essentially

the same facts as a prior Supreme Court case but reaches an

opposite result.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-6

(2000) (citations omitted).  A state court decision is an

"unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended. Id. at 407. Furthermore, any factual determination made by the state court must be presumed correct unless the petitioner can prove otherwise by clear and convincing evidence. See § 2254(e)(1).

Before determining whether the Appellate Division's ruling upholding the Parole Board's decision survives AEDPA scrutiny, the Court must determine whether the Instant Petition is procedurally barred.

B.    PRELIMINARY PROCEDURAL QUESTIONS

1. Timeliness

The Instant Petition is timely. Persons held in custody pursuant to state court judgments have one year in which to file a petition for habeas relief. See 28 U.S.C. § 2244(d)(1). The limitations period begins to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. at § 2244(d)(1)(D). Where a habeas petition challenges parole revocation, this limitations period begins to run when the administrative decision to revoke parole

-10-

becomes final.  See Cook v. New York State Div. of Parole, 321
F.3d 274, 280-81 (2d Cir. 2003).  However, the period during
which properly filed state-court motions for collateral relief
are pending will toll the limitations period.  See 28 U.S.C.
§ 2244(d)(2); Cook, 321 F.3d at 282.

The Appeals Unit affirmed Suce's parole revocation on May
11, 2005; therefore, the limitations period began to run on
that date.  On August 5, 2005, Suce filed his Article 70
petition with the New York Supreme Court, which he appealed to
the Appellate Division, and on June 28, 2007, his motion for
leave to appeal was denied by the New York Court of Appeals.
The Instant Petition was properly filed as of August 15, 2007,
when Suce delivered the Instant Petition to a prison official
for mailing.  Thus, the only periods not tolled were the
period from May 11, 2005 to August 5, 2005, and the period
from July 28, 2007 to August 15, 2007.  Because these periods
total 138 days, less than a year of chargeable time has passed
since Suce's parole revocation became final.  Accordingly, the
Instant Petition is timely.

2. Exhaustion

A petition for habeas corpus may not be brought in
federal court unless the petitioner has first either exhausted
the remedies available in state court or demonstrated the
absence of an effective state remedy.  See Fama v.
Commissioner of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000)

-11-

(citing § 2254(b)(1)). A petitioner has exhausted a claim in state court when he has "'fairly presented' each federal claim to the highest state court." Id. (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Daye v. Attorney General of N.Y., 696 F.2d 186, 191 (2d Cir. 1982)). The claim raised in the federal habeas petition, in other words, must be the "substantial equivalent" of the claim presented to state court. See Strogov v. Attorney General of N.Y., 191 F.3d 188, 191 (2d Cir. 1999) (quoting Picard, 404 U.S. at 278).

Nonetheless, this Court may choose to consider an unexhausted claim on its merits notwithstanding the absence of exhaustion. See § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). If this Court finds that all of the claims presented as a basis for habeas relief lack merit, the Court has discretion to dismiss the petition on its merits even though it may contain some unexhausted claims. See, e.g., Mallet v. Miller, 432 F. Supp. 2d 366, 375 (S.D.N.Y. 2006).

-12-

Respondents argue that Suce did not exhaust the Non-Disclosure Claim because he did not present the Non-Disclosure Claim or its "substantial equivalent" to each state court. The Court, however, finds sufficient evidence in the record suggesting that Suce presented the Non-Disclosure Claim to the Appellate Division. Specifically, in his brief to the Appellate Division, Suce argues at multiple points that it was an error for Judge Maccario to admit the Lab Reports into evidence at the October 14 Hearing because they had not been provided to Suce or his counsel prior to that date. (See Appellant-Pet'r Appellate Br., dated July 26, 2006, at 1, 2, 4, 7, attached as Ex. A to Pet.) The Court need not reach the issue of whether the Non-Disclosure Claim was exhausted in state court, however, because as is discussed in greater detail below in Section II(C)(4), the Court finds the Non-Disclosure Claim lacks sufficient merit.

### 3. State Procedural Grounds

In general, a federal habeas court may not review a state court decision if the holding "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Federal review is precluded only when the state court's decision explicitly and unambiguously relies on a procedural bar that derives from state law. Fama, 235 F.3d at 809-10. If the highest state court to consider a claim

-13-

reaches its decision on the merits, then any bar to federal review is removed. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) (citing Harris v. Reed, 489 U.S. 255, 262 (1989)). An appellate court that affirms a ruling without comment is presumed to have relied on the same grounds as the lower court. See id. at 803-04.

The New York Court of Appeals denied without comment Suce's leave to appeal. See New York ex rel. Suce, 872 N.E.2d at 876. Thus, the grounds relied upon by the Appellate Division determine whether Suce's habeas petition is procedurally barred. See Ylst, 501 U.S. at 803-04. The Appellate Division affirmed the Supreme Court's denial of Suce's petition on the merits, arguing that Charge 9 was supported by substantial evidence, that Suce did not deny Charges 1, 3, and 5, that Suce's failure to appear at the October 21 Hearing did constitute a waiver of his right to be present, and that the Ex Post Facto Clause does not apply to state agency regulations. See New York ex rel. Suce, 828 N.Y.S.2d at 729. Thus, the Instant Petition is not procedurally barred, and this Court will now consider its merits.

C.   MERITS OF DUE PROCESS CLAIM

1.   Due Process Requirements of Parole Revocation

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment applies to the revocation of parole.

-14-

See, e.g., Greenholtz v. Inmates of the Neb. Penal & Corr.
Complex, 442 U.S. 1, 9 (1979); Morrissey v. Brewer, 408 U.S.
471, 481-82 (1972).  However, the Supreme Court has also
recognized that defendants in parole revocation proceedings
are not entitled to "the full panoply of rights" that are
accorded in a criminal prosecution.  Morrissey, 408 U.S. at
480 (citing Mempa v. Rhay, 389 U.S. 128 (1967)).  Rather,
given that the state has an "overwhelming" interest in being
able to return parole violators to prison "without the burden
of a new adversary criminal trial," the Due Process Clause, in
this regard, requires merely that an "informal hearing" be
held "to assure that the finding of a parole violation will be
based on verified facts and that the exercise of discretion
will be informed by an accurate knowledge of the parolee's
behavior." Id. at 483-84.  Thus, the "minimum requirements of
due process" include:

> (a) written notice of the claimed violations of parole;
> (b) disclosure to the parolee of evidence against him;
> (c) opportunity to be heard in person and to present
> witnesses and documentary evidence; (d) the right to
> confront and cross-examine adverse witnesses (unless the
> hearing officer specifically finds good cause for not
> allowing confrontation); (e) a "neutral and detached"
> hearing body . . . and (f) a written statement by the
> factfinders as to the evidence relied on and reasons for
> revoking parole.

Id. at 489; accord Calhoun v. New York State Div. of Parole
Officers, 999 F.2d 647, 652 (2d Cir. 1993) (holding that the
state may not revoke a person's parole without providing

-15-

minimum due process protections which include "a preliminary
probable cause hearing . . . , as well as a final revocation
hearing, at which a parolee may present evidence and confront
witnesses"). The Supreme Court has not articulated any
additional due process requirements for parole revocation
proceedings. Thus, Morrissey represents the "clearly
established Federal law" for purposes of federal habeas
review. § 2254(d)(1). Further, the Second Circuit has
determined that under New York Executive Law § 259-i ("§ 259-
i"), New York provides procedures governing parole revocation
that generally satisfy due process. See Calhoun, 999 F.2d at
652 (citing § 259-i(3)(f)).

2.    The In Absentia Claim

In the Instant Petition, Suce claims that it was error
for Judge Maccario to conduct the October 21 Hearing in his
absence. He further claims that he requested an adjournment
of the hearing, and that he was unable to attend for medical
reasons. In New York, a parolee can waive the right to be
present at a final parole revocation hearing as long as the
waiver is made knowingly and intelligently. See In re White
v. New York State Div. of Parole, 458 N.E.2d 1258, 1259 (N.Y.
1983) ("Inasmuch as there [was] nothing in the record to
indicate that [petitioner's] waiver was not made knowingly and
intelligently, the waiver was effective and there was nothing

-16-

to prevent respondent from proceeding in petitioner's absence."). Additionally, where a parolee knowingly and intelligently waives his right to be present, it is not a due process violation under Morrissey to hold the hearing in his absence. See Giles v. Irvin, 914 F. Supp. 957, 958-59 (W.D.N.Y. 1996).

At the October 21 Hearing, Judge Maccario found that Suce had "knowingly and voluntarily refused to appear," and granted the Division's application to proceed in his absence. (October 21 Hearing Tr. at 11, attached as Ex. H to Fleishmann Decl.) Similarly, Justice Feldstein, who presided over Suce's Article 70 proceeding in the New York Supreme Court, found that it was not error for Judge Maccario to hold the October 21 Hearing in Suce's absence. (See New York Supreme Court Decision at 9-12, attached as Ex. L to Fleischmann Decl.) The Appellate Division affirmed, finding that Suce's "refusal to appear at the last session of his parole revocation hearing constituted a waiver of his right to be present." People ex rel. Suce, 828 N.Y.S.2d at 729.

In the Instant Petition, Suce claims that he did not waive his right to be present. Instead, Suce argues that he wrote a letter requesting an adjournment of the October 21 Hearing and that he was unable to attend the hearing due to a knee injury. The Appellate Division did not comment on these

-17-

claims, but Justice Feldstein found there to be no factual basis for either proposition. First, Justice Feldstein noted that the medical evidence offered in support of Suce's claims indicated only that Suce should be allowed to wear an elastic bandage around his knee and did not "suggest that the petitioner was physical [sic] unable to attend" the hearing. (New York Supreme Court Decision at 10, attached as Ex. L to Fleischmann Decl.)  Second, Justice Feldstein found that "there [was] no evidence that either the petitioner or his attorney effectively communicated a request for adjournment." (Id. at 11.)  On federal habeas review, any factual determination made by the state court must be presumed correct unless the petitioner can prove otherwise by clear and convincing evidence. See § 2254(e)(1). Here, beyond his conclusory allegations, Suce has provided no evidence to support his claims that he requested an adjournment and that he was unable to attend due to his knee injury.[4] In his Reply he merely alleges that he never signed the "undelivered defendant form," and that prison officials failed to transport Suce to the October 21 Hearing. The Court finds that Suce has not provided clear and convincing evidence to warrant

---

[4] Although Suce notes on the page entitled "Petitioner's Petition Exhibits List" that Exhibits H1, H2, and H2 refers to "Petitioner's Request Correspondence Letter for Postponment [sic]," "New York City Local [J]ail Medical Document-October 15, 2004," and "New York City's Hospital Medical Document-April, 2004," respectively, (Rep. at ii), the Court finds no such documents attached either to Suce's Petition or his Reply.

departing from the factual findings of Justice Feldstein described above.

In contrast, the Court finds that there is sufficient evidence to support the determinations made in the state court proceedings that Suce had knowingly and intelligently waived his right to appear at the October 21 Hearing.  First, Suce's attorney presented Judge Maccario with an "undelivered defendant form," signed by Suce and a witness stating that Suce did not wish to attend the hearing.  (See October 21 Hearing Tr. at 6, attached as Ex. H to Fleischmann Decl.)  In New York, an "undelivered defendant form" signed by the alleged parole violator constitutes sufficient evidence of a waiver and, where the form is not produced, reliance on the Administrative Law Judge's ("ALJ") summary of the form in the hearing transcript is proper.  See People ex rel. Herrera v. Eastmond, 737 N.Y.S.2d 67 (App. Div. 1st Dep't 2002).  Second, there is ample evidence in the record demonstrating that Suce was aware that if he refused to appear, the Final Revocation Hearing could be conducted in his absence.  The NOV, which Suce signed on August 6, 2004, indicates that "[a]ny voluntary failure on your part to be present at any of these proceedings may result in a finding that your failure to appear was a voluntary, knowing and intelligent waiver of your right to appear," and that "[s]hould such a finding be made, a hearing in absentia can be held."  (Notice of Violation, attached as

-19-

Ex. B to Pet'r's Reply.)  At the Arraignment, Judge Birmingham
gave a similar warning to Suce, explaining that "if [he]
refuse[d] to come on that date, Division w[ould] be authorized
to proceed without [him]," in an in absentia hearing, and that
he "should be aware that [in] an in absentia hearing, Division
generally wins and parolees generally lose, so it's always in
your best interest not to refuse."   (Arraignment Tr. at 3,
attached as Ex. D to Fleischmann Decl.)   At the October 14
Hearing, Judge Maccario issued a similar warning, noting that
"releasee is advised in the event he fails to appear on
[October 21], the matter will be completed in his absence."
(October 14 Hearing Tr. at 148, attached as Ex. G to
Fleischmann Decl.)  Accordingly, the Court finds that it was
not error for Judge Maccario to conduct the October 21 Hearing
in Suce's absence because Suce had knowingly and intelligently
waived his right to be present.

### 3.    The Altered Documents Claim

In the Instant Petition, Suce claims it was improper for
Judge Maccario to consider altered copies of the NOV and the
Violation of Release Report (the "VOR").   Suce argues that
these documents were altered in the following ways: "typed,
changed dates, changed delinquency date and different parole
officers [sic] signatures."  (Pet. ¶ 12.)  Suce claims that it
was further improper for Judge Maccario to allow these altered

-20-

reports when Judge Albano did not allow them at the Preliminary Hearing. Reading the Petition liberally, in light of Suce's pro se status, the Altered Documents Claim could be fairly interpreted as challenging the effectiveness of the "written notice of the claimed violations of parole" in accordance with Morrissey. 408 U.S. at 489. Otherwise this claim could be resolved summarily for Suce's failure to allege a violation of federal law. See, e.g., Thurman, 2004 WL 2101911, at *11 (citing Estelle, 502 U.S. at 67-68).

The Second Circuit has explained that the purpose of affording a petitioner notice of the charges against him is to permit him the "opportunity to contest or explain matters relating to the charged offense." D'Amato v. United States Parole Comm'n, 837 F.2d 72, 77 (2d Cir. 1988) (citing United States ex rel. Carson v. Taylor, 540 F.2d 1156, 1159 (2d Cir. 1976) ("Carson")). Furthermore, the "failure to provide written notice, by itself, is insufficient to justify habeas relief; appellants must demonstrate that they were prejudiced by the claimed infringement of their procedural rights." Id. at 77 (citing Heath v. United States Parole Comm'n, 788 F.2d 85, 89 (2d Cir.), cert. denied, 479 U.S. 953 (1986)).

Here, Suce does not allege, and the Court does not find, any prejudice resulting from the alleged alterations to the VOR. That Vargas submitted to Judge Albano at the Preliminary

-21-

Hearing a typed copy of the VOR containing Charges 1-4 (the "Typed VOR"), (see Violation of Release Report, attached as Ex. B to Fleischmann Decl.), as opposed to the Handwritten VOR (see Violation of Release Report, attached as Ex. C to Pet'r's Reply), did not prejudice Suce where, as Justice Feldstein found, there were "no significant discrepancies" between the typed and handwritten versions. (See New York Supreme Court Decision at 14, attached as Ex. L to Fleischmann Decl.)

Furthermore the "changed dates, changed delinquency date and different parole officers [sic] signatures," (Pet. ¶ 12), that Suce alleges constitute improper alterations of the VOR actually arise because Vargas submitted a supplementary Violation of Release Report (the "Supplemental VOR"). The Supplemental VOR included five additional charges, Charges 5-9, and amended Suce's delinquency date to March 9, 2004 in accordance with those additional charges. (See First Supplementary of Violation Report, attached as Ex. B to Fleischmann Decl.; see also Subsequent Developments, attached as Ex. B to Fleischmann Decl.) Vargas attempted to serve Suce with the Supplemental VOR at the Preliminary Hearing, but Judge Albano did not allow her to proceed under those charges due to the lack of notice prior to the hearing.[5]    (See

---

[5] § 259-i(3)(f)(iii) provides that a parole violator and counsel "shall be given written notice of the date, place and time of the hearing as soon as possible but at least fourteen days prior to the scheduled date." The Division's regulations provide that "such notice shall include a copy of the Report of the Violation of Parole." 9 N.Y.C.R.R. § 8005.18(c).

Preliminary Hearing Tr. at 3-4, attached as Ex. C to
Fleischmann Decl.) Instead, the Division served Suce with the
Supplemental VOR on August 26, 2004, at the Arraignment before
Judge Birmingham, who postponed the revocation proceedings
until September 9, 2004 in accordance with the notice
requirements under New York law. (<u>See</u> Arraignment Tr.,
attached at Ex. D to Fleishchmann Decl.) Accrodingly, the
Supplemental VOR was properly before Judge Maccario even
though Judge Albano did not admit it at the Preliminary
Hearing.[6] For the reasons mentioned above, the Court finds
insufficient merit in Suce's Altered Documents Claim.

In his Reply, Suce elaborates on the Altered Documents
Claim, arguing that the Handwritten VOR was altered by Vargas
to correct the fact that Solorzano, Gates, and Miller had
arrested Suce without a valid warrant signed by a senior
parole officer pursuant to 9 N.Y.C.R.R. § 8004.2(a) and § 259-
i(3)(a)(i). In support of the Altered Documents Claim, Suce

---

Therefore, where a parole violator is not served with the Violation of
Release Report at least fourteen days prior to the scheduled parole
revocation hearing, relief from parole revocation is required. <u>See People
ex rel. Smith v. New York State Bd. of Parole</u>, 517 N.Y.S.2d 145, 147 (App.
Div. 1st Dep't 1987).

[6] The Court finds no instances of case law noting that the addition of a
supplemental Violation of Release Report would constitute a violation of
due process, but rather finds many precedents in which violations in
similar supplemental reports were filed without issue. <u>See</u>, <u>e.g.</u>, <u>Drayton
v. Travis</u>, 772 N.Y.S.2d 886 (App. Div. 3d Dep't 2004)(allowing
supplementary violation report prepared after petitioner had waived his
preliminary hearing but before final parole revocation hearing); <u>People ex
rel. Burt v. Warden</u>, 854 N.Y.S.2d 861, 863 (N.Y. Sup. Ct. 2008) (allowing
supplementary violation report prepared after issuance of parole warrant
but prior to arrest and preliminary hearing).

attached three exhibits to his Reply. Exhibit B[7] is a copy of the NOV, which was prepared by Solorzano and signed by Suce on August 6, 2004. Exhibit C is a copy of the Handwritten VOR. Exhibit D is a copy of the State of New York Executive Department Division of Parole Area/Bureau Analysis (the "Bureau Analysis") submitted and signed by Senior Parole Officer Paul Pacheco ("Pacheco") on August 17, 2004. Suce claims that the Handwritten VOR "'Does _Not_' have the authorization name or signature of any member of the Board or of a designated officer of the Division," whereas the Typed VOR and the Supplemental VOR "ha[ve] the authorization name and signature of the designated officer (Senior Parole Officer Mr. Paul Pacheco[])." (Pet'r's Reply at 4.)

The Court finds this claim, as revised by Suce's Reply, lacks sufficient merit. First, the documents do not support Suce's claim. Although it is true that the Handwritten VOR, attached as Exhibit C to his Reply, does not bear any signature, it is equally true that neither the Typed VOR nor the Supplemental VOR, submitted by Respondents, bears any such signature. Furthermore, the only documents bearing the signature of Pacheco are identical copies of the Bureau Analysis. (See Bureau Analysis, attached as Ex. D to Pet'r's

---

[7] Although Suce notes on the page entitled "Petitioner's Petition Exhibits List" that Exhibit A refers to "Parole Revocation Detainer Warrant No. 404276- Issued [F]ebruary 17, 2004, and Exonerated March 5, 2004," (Rep. at ii), the Court finds no such warrant attached to Suce's Reply, nor does the Court find any other document labeled Exhibit A attached to Suce's Reply.

Reply; <u>see</u> <u>also</u> Bureau Analysis, attached as Ex. B to Fleischmann Decl.) Accordingly, the Court finds no merit in Suce's Altered Documents Claim.[8]

### 4.  The Non-Disclosure Claim

In the Instant Petition, Suce argues that it was improper for Judge Maccario to allow into evidence the Lab Reports even though they had not been provided to Suce's counsel prior to the October 14 Hearing.  Reading the Instant Petition liberally, the Non-Disclosure Claim could be fairly interpreted as arguing that the Division did not provide "disclosure to the parolee of evidence against him," in accordance with <u>Morrissey</u>, 408 U.S. at 489.

As previously noted, defendants in parole revocation proceedings are not entitled to "the full panoply of rights" that are accorded them in a criminal prosecution. <u>Morrissey</u>, 408 U.S. at 480 (<u>citing</u> <u>Mempa</u>, 389 U.S. 128).  In contrast, due process requires only that an "'informal hearing' be held 'to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.'"    <u>Thurman</u>, 2004 WL 2101911, at *12 (<u>quoting</u>

---

[8] If Suce's claim is, alternatively, that his parole arrest warrant was unlawfully issued because it was not signed by a senior parole officer, or because it was signed by the same parole officer who sought to obtain the warrant in violation of § 259-i(3)(a)(1) and 9 N.Y.C.R.R. § 8004.2, then this claim would be resolved summarily because it would not raise any issue of federal law. <u>See</u> <u>Fletcher v. Graham</u>, No. 05 Civ. 1383, 2007 WL 2227505, at *3 (N.D.N.Y. July 31, 2007); <u>Thurman</u>, 2004 WL 2101911, at *12.

Morrissey, 408 U.S. at 483-84). Additionally, "states have wide latitude under the constitution to structure parole revocation proceedings." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 365-66 (1998). Furthermore, "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489; accord Pennsylvania Bd. Of Prob. & Parole, 524 U.S. at 364 (stating that a parole revocation proceeding is a "flexible, administrative" hearing where "traditional rules of evidence do not apply").

The Second Circuit has noted that the "minimum requirements of due process" as discussed in Morrissey, "are designed to further a variety of specific but vital objectives: (1) minimization of surprise so that the parolee may formulate and organize a coherent and complete defense; (2) the opportunity directly (and thus more effectively) to challenge witnesses speaking against him; and (3) objective decisionmaking based on an accurate account of the parolee's conduct." Carson, 540 F.2d at 1159. With these standards in mind, the Second Circuit held that "due process requires that the parolee be afforded access to the documents that will be introduced against him, unless the Parole Board meets the burden of establishing good cause for their nondisclosure, e.g., that disclosure will lead to reprisals or substantially

-26-

interfere with a pending criminal investigation involving an allegation contained in the documentary record." Id. at 1163. Carson is distinguishable from the instant matter because in Carson, petitioner was never shown or given access to the file containing the allegations used to support parole revocation. See id. at 1158.  Instead, the revocation was based solely on the testimony of his parole officer, who summarized the allegations in the file, and petitioner had to rely on those summaries in order to fashion a response.  See id. Here, Suce was ultimately provided with the Lab Reports at the October 14 Hearing and Suce's counsel never objected to the untimely disclosure of the reports or requested an adjournment of the proceeding.   In contrast, Suce's counsel relied on the Lab Reports when cross examining Vargas on the toxicology results and related topics.   (October 14 Hearing Tr. at 44-66, attached as Ex. G to Fleischmann Decl.)  Therefore, the Court finds that the asserted inadvertent failure of the Division to provide Suce with a copy of the Lab Reports prior to the October 14 Hearing did not cause a defect in Suce's ability to either "formulate and organize a coherent and complete defense," or "directly (and thus more effectively) to challenge witnesses speaking against him," nor did it result in the absence of "objective decisionmaking based on an accurate account of the parolee's conduct." Carson, 540 F.2d at 1159.   Accordingly, the Court is not persuaded that the

-27-

delay in disclosing the Lab Reports to Suce sufficiently rises to the level of denying Suce due process.

    5.   The Solorzano Claim

In the Instant Petition, Suce alleges that it was improper for Judge Albano to allow Vargas to testify at the Preliminary Hearing in lieu of Solorzano, who had signed the NOV, prepared the Handwritten VOR, and arrested Suce. For the following reasons, the Court finds this claim lacks sufficient merit. First, due process, as outlined in Morrissey, requires only that "[o]n request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence." 408 U.S. at 487; accord People ex rel. Lent v. McNulty, 373 N.Y.S.2d 508, 510-11 (N.Y. Sup. Ct. 1975). Here, Justice Feldstein, who presided over Suce's Article 70 proceeding in the New York Supreme Court, found that Suce never requested that Solorzano appear at the Preliminary Hearing in lieu of Vargas. (See New York Supreme Court Decision at 14, attached as Ex. L to Fleischmann Decl.) Second, at the Preliminary Hearing, the Division demonstrated evidence allowing Judge Albano to find sufficient probable cause to sustain the Warrant solely on the basis of Charge 3, which alleged that Suce had failed to complete his report to Vargas on August 3, 2004. (See Preliminary Hearing Tr., attached as Ex. C to Fleischmann Decl.) Clearly, Vargas was the witness competent

-28-

to testify to this event regardless of who had prepared the NOV, the VOR, and arrested Suce. Accordingly, the Court finds that the Solorzano Claim lacks sufficient merit.

### 6.    The Gates Testimony Claim

Suce further claims that it was improper for Judge Maccario to allow Gates to give two divergent versions of his testimony at the October 14 and October 21 Hearings. Reading the Instant Petition liberally, this claim can be fairly interpreted as alleging that the parole revocation decision was not supported by a preponderance of the evidence as required by New York Executive Law § 259-i(3)(f)(viii). The standard for challenging the sufficiency of the evidence for a parole revocation is the same as for a criminal conviction; in both cases, the petitioner "bears a 'very heavy burden.'" Fletcher, 2007 WL 2227505, at *5. This Court has similarly held that "to withstand judicial review, there need only be some factual basis for the Board's determination that the parolee did violate the terms and conditions of his parole." Id. (citing McNeil v. Schubin, 353 F. Supp. 166, 167 (S.D.N.Y. 1973)). As previously noted, any factual determination made by the state court must be presumed correct unless the petitioner can prove otherwise by clear and convincing evidence. See § 2254(e)(1). In Fletcher, the court held that this statutory mandate applied to witness credibility determinations made by the presiding ALJ. 2007 WL 2227505, at

-29-

*6 ("This Court must presume that such credibility determinations were correct."). In <u>Fletcher</u>, where the petitioner offered no evidence to rebut the presumption based on the ALJ's finding that the witness was credible, the court denied his claim that the decision was not based on sufficient evidence. In this case, Suce similarly has provided no evidence to rebut the presumption based on Judge Maccario's finding that Gates was gave credible testimony. Furthermore, a review of the record indicates that there was sufficient evidence supporting parole revocation. Accordingly, Suce's Gates Testimony Claim lacks sufficient merit.

    7.   <u>The Ex Post Facto Claim</u>

In the Instant Petition, Suce alleges that the delinquent time assessment imposed at the conclusion of his Final Revocation Hearing was based upon mandatory parole guideline regulations, namely 9 N.Y.C.R.R. § 8005.20, which were enacted in 1997 (the "1997 Amendments"), after Suce's underlying conviction and sentence. Suce argues that the application of these regulations to his parole revocation constitutes a violation of the Ex Post Facto Clause of the United States Constitution. The Ex Post Facto Clause bars any "enactments, which by retroactive operation, increase the punishment for a crime after its commission." <u>Garner v. Jones</u>, 529 U.S. 244, 249-50 (2000). The habeas court in <u>D'Joy v. New York State Div. of Parole</u>, 127 F. Supp. 2d 433 (S.D.N.Y. 2001),

considered the precise question before this Court and held that the 1997 Amendments "are not 'laws' within the meaning of the Ex Post Facto Clause, but guidelines which assist the [Division of Parole] in exercising its discretion in making parole assessments."    Id. at 440 (citing Flowers v. Wincelowicz, No. 96 Civ. 3276, 2000 WL 254011, at *2 (S.D.N.Y. Mar. 6, 2000); see also People ex rel. Johnson v. Russi, 685 N.Y.S.2d 661, 662 (App. Div. 1st Dep't 1999) (additional citations ommitted).    Accordingly, this Court finds that Suce's Ex Post Facto Claim lacks sufficient merit.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the petition (Docket No. 1) of petitioner Luciano Suce for a writ of habeas corpus is DENIED.

As Suce has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.    See 28 U.S.C. § 2253(c);    Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

-31-

The Clerk of the Court is directed to withdraw all pending motions and to close this case.

**SO ORDERED:**

Dated:    New York, New York
          1 August 2008

VICTOR MARRERO
U.S.D.J.